STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

Henry F. McCALL, Defendant-Appellant.

Supreme Court

*No. 94–1213–CR. Oral argument April 30, 1996.—Decided June 19, 1996.*

(Also reported in 549 N.W.2d 418.)

30

For the plaintiff-respondent-petitioner the cause was argued by *Daniel J. O'Brien*, assistant attorney general, with whom on the brief was *James E. Doyle*, attorney general.

For the defendant-appellant there was a brief (in the Court of Appeals) by *Mary Louise Radzimowski*, Milwaukee and oral argument by *Mary Louise Radzimowski*.

JON P. WILCOX, J. The plaintiff-respondent-petitioner State of Wisconsin (State) seeks review of an unpublished decision of the court of appeals which

reversed a judgment of conviction in the circuit court for Milwaukee County, the Honorable Charles B. Schudson presiding, after a jury found the defendant-appellant Henry F. McCall (McCall) guilty of second-degree reckless injury, contrary to Wis. Stat. § 940.23(2) (1991-92). The court of appeals concluded that McCall's constitutional right to confront his accusers[1] was violated when the circuit court would not permit his counsel to cross-examine the victim regarding the dismissal of three charges[2] pending against him prior to his testimony at McCall's trial. *See State v. McCall*, No. 94-1213-CR, unpublished op. at 2 (Wis. Ct. App. Mar. 28, 1995). The appellate court reversed the judgment of conviction and remanded for a new trial. *Id.*

The issue before the court on this review is whether the court of appeals erred as a matter of law when it failed to give deference to the circuit court's discretionary act of limiting the scope of cross-examination. We hold that the circuit court did not erroneously exercise its discretion or otherwise err when it concluded that defense inquiry on cross-examination regarding the three dismissed charges was not relevant, and therefore inadmissible. The circuit court found that any relevance of the proffered evidence was outweighed by other considerations, including the risk of unfair prejudice, a strong potential for confusing the

[1] The confrontation clause issue was raised sua sponte by the appellate court. It was not the basis for the defendant's response to the State's objection at trial, nor was it argued in his appellate brief.

[2] The charges included battery, resisting an officer, and operating a motor vehicle without owner's consent.

issues, and a waste of valuable trial time. *See* Wis. Stat. § 904.03 (1993-94).[3]

## I.

On February 22, 1992, Robert Wade (Wade) entered the apartment of his friend McCall, an individual from whom he had purchased cocaine in the past. Wade had been drinking and smoking cocaine in celebration of his birthday on that evening, prior to going up to McCall's residence. The facts regarding Wade's entry into the apartment and the ensuing scuffle between Wade and McCall are disputed. What is clear is that Wade's wife, Kathleen Wade, was in McCall's apartment when Wade arrived. Some form of altercation took place, and Wade was eventually shot in the shoulder by McCall. The bullet permanently lodged in Wade's spinal column, resulting in a quadriplegic condition which has confined him to a wheelchair. On the evening of the incident, he stated that he and McCall had been arguing, McCall had hit him on the head with the gun and shortly thereafter, shot him in the shoulder.

In June 1992, several months after the shooting occurred, Wade was interviewed by a police detective at his home. In recounting the events which had transpired in February, Wade stated to the officer that the only thing that he could remember that night was knocking on McCall's apartment door and later waking up in the hospital. At trial, Wade testified that after

---

[3] Section 904.03 provides as follows:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

knocking upon McCall's door, McCall opened the door and let him in. McCall then closed and locked the door behind Wade. According to Wade's testimony, McCall then turned around with a gun in his hand and put it at Wade's shoulder. Wade's wife was hiding in the bathroom at the time and did not witness the shooting. Wade could not remember the gun discharging, but simply stated that the last thing he could remember was McCall pushing the gun into his shoulder. He then testified that he could not recall anything else that happened that evening until he awoke in the hospital and was being questioned by a police detective.

McCall's version of the events that evening were substantially dissimilar. McCall claimed that he shot Wade in self-defense, stating that after answering the knock on the door, and seeing that it was Wade, he attempted to shut the door, not intending to grant Wade entry into the apartment. Wade allegedly forced his way past the door and made threatening gestures directed at McCall. In response, McCall testified that he hit him on the head with the gun, so as to alleviate any further struggle. When Wade persisted, McCall shot him in the shoulder.

Wade represented the State's primary witness to refute McCall's self-defense theory. During cross-examination of Wade, McCall attempted to impeach the witness by inquiring into the nature of an alleged agreement between Wade and the prosecutor regarding the recently dismissed charges pending against him. Though Wade specifically denied that any agreement in fact existed, the State objected, and a hearing was conducted outside the presence of the jury.

The circuit court sustained the State's objection, denying the defense permission to proceed with this line of questioning during cross-examination. The cir-

cuit court judge articulated on the record the factors which he had considered in concluding that the proffered evidence was irrelevant and why its limited probative value was substantially outweighed by the danger of confusing the issues and wasting time on speculative and collateral matters. McCall was subsequently convicted of the lesser-included charge, second-degree reckless injury. Further facts will be noted as necessary in this opinion.

## II.

■■■

McCall argues that it was reversible error for the circuit court to prohibit defense counsel from cross-examining Wade regarding the dismissal of three charges which had been pending prior to the start of McCall's trial.[4] The extent and scope of cross-examination allowed for impeachment purposes is a matter within the sound discretion of the circuit court. *Rogers v. State*, 93 Wis. 2d 682, 689, 287 N.W.2d 774 (1980); *Chapin v. State*, 78 Wis. 2d 346, 352, 254 N.W.2d 286 (1977). "The appellate court should reverse a trial court's determination to limit or prohibit a certain area of cross-examination offered to show bias only if the trial court's determination represents a prejudicial abuse of discretion." *State v. Lindh*, 161 Wis. 2d 324, 348-49, 468 N.W.2d 168 (1991) (citing *State v. Whiting*, 136 Wis. 2d 400, 422, 402 N.W.2d 723 (Ct. App. 1987)).[5]

---

[4] Although McCall did not file a brief in the supreme court, this argument was presented in his brief to the court of appeals and is relevant to our review today.

[5] Moreover, in *Hartung v. Hartung*, 102 Wis. 2d 58, 66, 306 N.W.2d 16 (1981), this court stated:

A discretionary determination, to be sustained, must demonstrably be made and based upon the facts appearing in the record and in

No abuse of discretion will be found if a reasonable basis exists for the circuit court's determination. *State v. Oberlander*, 149 Wis. 2d 132, 140-41, 438 N.W.2d 580 (1989).

■

During cross-examination, the defendant sought to probe the circumstances surrounding the dismissal of charges which had been pending against Wade prior to trial. As the sole eyewitness for the prosecution, the accuracy and truthfulness of Wade's testimony were key elements in the State's case. The nature of the inquiry was clearly directed to effectuate an attack on the credibility of Wade as a witness, designed to reveal possible biases, prejudices, or ulterior motives that Wade may have possessed, as they directly related to his testimony against the defendant.[6] The State, however, objected to this line of inquiry on relevancy

---

reliance on the appropriate and applicable law. Additionally, and most importantly, a discretionary determination must be the product of a rational mental process by which the facts of record and law relied upon are stated and are considered together for the purpose of achieving a reasoned and reasonable determination. It is recognized that a trial court in an exercise of its discretion may reasonably reach a conclusion which another judge or another court may not reach, but it must be a decision which a reasonable judge or court could arrive at by the consideration of the relevant law, the facts, and a process of logical reasoning.

[6] The change in testimony which McCall suggests is critical to the inference that some form of "dismissal for false testimony" agreement was in place involved Wade's contention for the first time at trial that the last thing he remembered was the defendant putting what appeared to be a gun to his shoulder. As recognized by the circuit court, the significance placed upon this minimal discrepancy by McCall is misplaced. At trial, McCall admitted that he was the one who had shot Wade in the upper chest, arguing that the shooting was in self-defense. Therefore, there was no dispute as to who shot Wade, or how he was shot.

grounds. *See* Wis. Stat. § 904.01 (1993-94).[7] This court and the United States Supreme Court have recognized that a defendant's opportunity to explore the subjective motives for the witness's testimony is a necessary ingredient of a meaningful cross-examination.[8]

In *Rogers*, this court pronounced that "[t]he proper standard for the test of relevancy on cross-examination is not whether the answer sought will elucidate any of the main issues in the case but whether it will be useful to the trier of fact in appraising the credibility of the witness and evaluating the probative value of the direct testimony." *Rogers*, 93 Wis. 2d at 689 (citing McCormick, *Evidence*, § 30 (2d Ed. 1972)). Moreover, in *Lindh*, we highlighted the circumstances under which courts have properly excluded bias evidence:

> Other courts have delineated some of the prejudice factors which may warrant the exclusion of bias evidence. One factor is whether the evidence would divert the trial to an extraneous issue. *Hossman v. State*, 467 N.E.2d 416, 418 (Ind. 1984). A court can and should exclude bias evidence which has little

Further inquiry into this area would have proven both unnecessarily cumulative and a waste of trial time.

[7] Section 904.01 provides as follows:

'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

[8] *State v. Lenarchick*, 74 Wis. 2d 425, 448, 247 N.W.2d 80 (1976). In *Davis v. Alaska*, 415 U.S. 308 (1974), the United States Supreme Court suggested that rather than accepting the witness's denial concerning bias, cross-examination should be permitted "to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." *Id.* at 318.

bearing on the witness's credibility, but which would impugn the witness's character because such evidence "opens the door to improper considerations and lends to the confusion of the jury by placing undue emphasis on collateral matters." *People v. Cole*, 654 P.2d 830, 833 (Colo. 1982). If the bias evidence, taken as a whole, might have directed the jury's attention away from the case under consideration, it may be prejudicial. *Id.* at 834.

The trial court may exclude bias evidence if the very slight probative value of the evidence on the issue of bias fails to overcome its strong likelihood of confusing the issues and undue delay. *United States v. Jarabek*, 726 F.2d 889, 902 (1st Cir. 1984). The appellate court should not find the trial court abused its discretion when the relevance of the proffered bias evidence was unclear and the risk of prejudice was real. *United States v. Sellers*, 658 F.2d 230, 232 (4th Cir. 1981). The trial court may prohibit cross-examination in a certain area where to permit it would open up extraneous matters, for the trial court " 'has responsibility for seeing that the sideshow does not take over the circus.' " *United States v. Brown*, 547 F.2d 438, 446 (8th Cir. 1977).

*Lindh*, 161 Wis. 2d at 363.[9]

Before deciding whether to grant McCall's request to explore what he perceived to be a "working relationship" between Wade and the prosecutor regarding trial testimony and the dismissal of pending charges, the

---

[9] *See also Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) (holding that bias evidence which is only marginally relevant or which may confuse the issues is excludable); *State v. Williamson*, 84 Wis. 2d 370, 384-85, 267 N.W.2d 337 (1978) (stating that evidence which is relevant to provide bias "must also satisfy sec. 904.03, Stats., requiring the trial court to weigh the probative effect of the evidence against its prejudicial effect").

circuit court gave heed to the extensive arguments of counsel in a hearing conducted outside the jury's presence. After balancing the relevancy of the proffered evidence against the danger of unfair prejudice and confusion of the issues, *see* Wis. Stat. § 904.03 (1993-94), the circuit court demonstrated a logical reasoning process in sustaining the State's objection to continued inquiry into this line of questioning. The circuit court reasoned that the dismissal of the three charges did not notably affect Wade's testimony at trial, stating:

> When we compare the statement given to the police and the statement given in court, that's simply not so. It is a very small difference that would be typical. A difference between a summary of the victim's statement immediately after an event given to police and testimony in court.
>
> Next, the difference that does exist relates to whether the victim remembers nothing at all or remembers something being put to his shoulder. Well, that is a difference on something that as I understand it is not in dispute.
>
> From what I understand the defense theory is here, there is not a denial that there was a gun, there's not a denial that there was a gunshot, there's not a denial that the defendant was the shooter. So in this very small area of difference, we are not entering any area of dispute whatsoever.
>
> Another way I suppose to phrase that is that if in fact the witness had suddenly decided to remember things that he didn't really remember, he certainly would be remembering much more than he says he remembers today.
>
> With all that in mind, I do not see any proper basis on which the Court should allow there to be questioning on what would prove to be a wholly distracting and speculative area.

The lack of any demonstrable impact of the dismissal of charges on Wade's testimony was but one of the various factors considered by the circuit court in exercising its discretion to limit the scope of cross-examination. *Compare State v. Nerison*, 136 Wis. 2d 37, 46, 401 N.W.2d 1 (1987) (discussing the need for full disclosure of terms of agreements struck with witnesses in order to preserve defendant's right to fair trial).

In reaching its decision, the court contemplated the prosecutor's benign grounds for dismissing the pending charges against Wade, namely, his permanently paralyzed state which would make incarceration difficult and would effectively prevent Wade from committing assaultive crimes or stealing cars in the future. The prosecutor further indicated that Wade's involvement in vocational rehabilitation, drug and alcohol therapy, as well as physical therapy, did not warrant his placement on probation, as to do so would simply be a waste of time and resources.

Though given the opportunity to discredit these pronouncements, McCall was unable to offer any proof to substantiate his claim of a clandestine agreement between Wade and the prosecutor. The record in this case bolsters the conclusion that the minimal variance in Wade's trial testimony would not support a reasonable inference that Wade was cooperating in accord with the terms of a prosecutorial deal, or perhaps, even, that he believed he may have been doing so. Thus, we find that a defense inquiry based upon this purely speculative theory is too far afield of any rational relationship to the truthful character of the witness or his testimony to consider it a prejudicial exercise of discretion to exclude the proffered testimony.

Moreover, the record is replete with evidence offered by McCall to afford the jury a basis to infer that Wade's credibility was such that he would be less likely than the average trustworthy citizen to be truthful in his testimony. Defense counsel was able to solicit the following information regarding Wade's character for truthfulness during cross-examination: Wade had ten prior criminal convictions; he had been in prison and had problems with alcohol; Wade had bought cocaine from McCall on more than one occasion; he had been drinking all day and had smoked cocaine prior to the shooting; Wade was attending drug and alcohol counseling at the time of trial; he had a bad temper but claimed to have learned how to control it over the years; and finally, Wade could not recall giving a statement to police on June 15, even though this was only a month before trial and he had in fact given such a statement.

The introduction of this evidence to the jury regarding the truthful character of the State's key witness was reiterated again during closing arguments. The jury's conviction on the lesser-included offense of second-degree reckless injury would seem to support the State's contention that the evidence admitted was in fact utilized to discredit the testimony offered by Wade, as the jury was not able to conclude beyond a reasonable doubt that McCall had acted with utter disregard for human life, an element required for conviction of the charge of first-degree reckless injury. *See* Wis. Stat. § 940.23(1) (1993-94). Brief for Petitioner at 30.

██

Although a defendant is entitled to significant latitude regarding the extent and scope of an inquiry to explicate the witness's bias, it is the duty of the circuit

court to curtail any undue prejudice by limiting cross-examination, including the exclusion of bias evidence which would divert the trial to extraneous matters or confuse the jury by placing undue emphasis on collateral issues. The circuit court did not erroneously exercise its discretion when it concluded that further inquiry into the existence of an alleged, though unproven agreement, would be wholly distracting and speculative. The bias evidence which McCall wished to introduce would have unnecessarily directed the jury's attention away from the case under consideration, and would have been unduly prejudicial.

■

After considering the appropriate law and relevant facts, the circuit court exercised its discretionary authority to limit cross-examination, concluding that any relevance of the proffered evidence was outweighed by these statutory considerations. *See* Wis. Stat. § 904.03 (1993-94). We therefore find that the court of appeals erred as a matter of law when it substituted its discretion for that of the circuit court.

### III.

We now turn to the court of appeals' conclusion, involving an issue raised sua sponte, that because the circuit court refused to permit cross-examination involving the dismissed charges, McCall was impermissibly denied his right to confront witnesses against him under the Sixth Amendment to the United States Constitution.[10] *McCall*, No. 94-1213-CR, unpublished

---

[10] The sixth amendment to the Constitution provides in part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor . . . ." The Wisconsin Constitution, art. I, § 7 provides as follows:

op. at 4. Due to the fact that the testimony which McCall sought to elicit was not relevant, by definition, we find that McCall's confrontation right under the Sixth Amendment was not violated.

This court and the United States Supreme Court have recognized that a defendant's right to confront the witnesses against him is central to the truthfinding function of the criminal trial. *Maryland v. Craig*, 497 U.S. 836, 845-47 (1990); *Ohio v. Roberts*, 448 U.S. 56, 64 (1980); *Mattox v. United States*, 156 U.S. 237, 242-43 (1895); *Rogers*, 93 Wis. 2d at 692-93. In *Davis v. Alaska*, 415 U.S. 308 (1974), the United States Supreme Court declared that "[t]he main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." *Id.* at 315-16 (quoting 5 J. Wigmore, *Evidence*, § 1395, p. 123 (3d. ed. 1940)). The right of cross-examination is more than a desirable rule of trial procedure. It is, indeed, "an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal." *Pointer v. Texas*, 380 U.S. 400, 405 (1965).

However, the right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process. *Chambers v. Mississippi*, 410 U.S. 284, 295 (1973). As acknowledged in the case of *Delaware v. Van Arsdall*, 475 U.S. 673 (1985):

> It does not follow, of course, that the Confrontation Clause of the Sixth Amendment prevents a trial

---

"In all criminal prosecutions the accused shall enjoy the right . . . to meet the witnesses face to face; to have compulsory process to compel the attendance of witnesses in his behalf . . . ."

judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness. On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant. And as we observed earlier this Term, "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (*per curiam*) (emphasis in original).

*Id.* at 679. This court has similarly stated that while the right to confront one's accusers is protected by the constitution, this right is not violated when the court precludes a defendant from presenting evidence which is irrelevant or immaterial. *Rogers*, 93 Wis. 2d at 692-93.[11]

As indicated earlier, we find that the circuit court properly exercised its discretionary authority to limit the scope of cross-examination, foreclosing the defense from presenting speculative and irrelevant evidence designed to confuse the issues in the instant case, and interject undue prejudice into the jury's decision making process. We conclude that the circuit court did not err in its ruling, and thus, there was no constitutional

---

[11] *See also Chapin v. State*, 78 Wis. 2d 346, 353, 254 N.W.2d 286 (1977); *State v. Becker*, 51 Wis. 2d 659, 666-67, 188 N.W.2d 449 (1971); *Milenkovic v. State*, 86 Wis. 2d 272, 286, 272 N.W.2d 320 (Ct. App. 1978).

violation in precluding McCall from introducing such evidence.

*By the Court.*—The decision of the court of appeals is reversed.

SHIRLEY S. ABRAHAMSON, J. (*dissenting*). I write separately because I would affirm the court of appeals' holding that the circuit court denied the defendant his right to confrontation under the Sixth Amendment of the United States Constitution.

Shortly before the defendant's jury trial was scheduled to begin, three charges—battery, resisting an officer and operating a motor vehicle without the owner's consent—then pending against the State's star witness (Wade)[1] were dismissed upon motion of the prosecutor who had been assigned to try the case against the defendant. Moreover, Wade's testimony changed during the interval between his initial interview with the police and his testimony at trial.

The defendant should have been afforded an opportunity to question Wade regarding whether Wade's testimony at trial was influenced by a subjective belief that the State would treat him more leniently if his testimony contributed to the defendant's conviction. I conclude that in denying the defendant this opportunity, the circuit court violated his right to confrontation.

The exposure of a witness's motivation in testifying represents "a proper and important function of the constitutionally protected right of cross-examination."

---

[1] As the majority points out, Majority op. at 36, "the accuracy and truthfulness of Wade's testimony were key elements in the State's case" because he was the sole eyewitness who testified for the prosecution.

*Davis v. Alaska*, 415 U.S. 308, 316-17 (1974) (citation omitted).[2] *See also State v. Lenarchick*, 74 Wis. 2d 425, 446, 247 N.W.2d 80 (1976);[3] *State v. Lindh*, 161 Wis. 2d 324, 371-72, 468 N.W.2d 168 (1991) (Abrahamson, J., dissenting).

I would agree with the majority when it observes that the Sixth Amendment right to confrontation does not prevent the circuit court from imposing limits on defense counsel's inquiry into the potential bias of a prosecution witness. Majority op. at 43-44 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1985)). But as the *Van Arsdall* opinion also makes clear in the very next paragraph, it does not follow that a court may

---

[2] In *Davis*, the Court held that it was error to bar cross examination of a state witness on probation because he was a juvenile. There was no suggestion in *Davis* that the State of Alaska had actually threatened to revoke the witness's probation or that the witness was a suspect in the underlying case. Nevertheless, the Court refused to dismiss the possibility that the jury, as sole judge of the credibility of a witness, would have accepted defense counsel's theory that the witness made a mistaken identification because he was anxious that if he did not cooperate with the police, his probation might be revoked or he himself might become a suspect. Therefore, stated the Court, "[t]he State's policy interest in protecting the confidentiality of a juvenile offender's record cannot require yielding of so vital a constitutional right as the effective cross-examination for bias of an adverse witness." *Davis*, 415 U.S. at 320.

[3] Even though that expectation were absurd, defense counsel had the right and duty to explore the witness' motives. When a witness has been criminally charged by the state, he is subject to the coercive power of the state and can also be the object of its leniency. The witness is aware of that fact, and it may well influence his testimony. A defendant, as an ingredient of meaningful self-examination, must have the right to explore the subjective motives for the witness' testimony.

*Lenarchick*, 74 Wis. 2d at 447-48.

prohibit "*all* inquiry into the possibility that [a witness] would be biased as a result of the State's dismissal" of pending charges. *Van Arsdall*, 475 U.S. at 679. In prohibiting defense counsel from questioning Wade regarding whether his testimony might have been influenced by the State's decision to drop pending charges against him, the circuit court imposed precisely the sort of blanket prohibition that the *Van Arsdall* court found unconstitutional.

Accordingly, I conclude that the court of appeals was correct when it determined that the defendant's Sixth Amendment right to confrontation was violated. I would affirm the court of appeals' mandate, reversing the judgment and remanding to the circuit court.

For the reasons set forth, I dissent.

WILLIAM A. BABLITCH, J. (*dissenting*). There were only two witnesses to the alleged crime: the accuser Wade and the accused McCall. The jury verdict necessarily depended on the word of one versus the other. Credibility of each person as a witness was crucial: the defendant said "self-defense," the accuser changed his initial story of "no recollection" to one in which he accused the defendant of attacking him. Yet the circuit court did not allow the accused to cross-examine his accuser with respect to an essential aspect of Wade's credibility: some weeks prior to trial, the district attorney dropped three pending unrelated criminal charges against the accuser Wade. Wisconsin Stat. § 904.03 provides in part that this cross-examination may be excluded if its probative value is "*substantially* outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury, or by considerations of undue delay, waste of time,

or needless presentation of cumulative evidence" (emphasis supplied). Not only is this evidence not "substantially" outweighed by the dangers, but in fact none of these factors are present. Accordingly, I respectfully dissent.

My difference with the majority is easily framed. Defendant McCall maintains that on February 22, 1992, he was in his apartment with a woman named Kathleen Wade when her husband, Robert Wade, came to the apartment. McCall testified that Wade pounded on his door, forced his way in when McCall opened the door, and came at him in a menacing way. McCall claims he shot Wade in self-defense.

Wade's story was different. Wade, in fact, had two stories. When first questioned by the police after the shooting, Wade stated that all he remembered was knocking on McCall's door, and then waking up in the hospital. At trial, however, Wade stated that he remembered being allowed into McCall's apartment, and then being shot by McCall for no reason.

At the time of the shooting, Wade had three criminal charges pending against him, all unrelated to this incident. Before McCall's trial, at which Wade was to testify for the State, the prosecutor dropped the charges against Wade. McCall claims that the circuit court erred when it barred him from cross-examining Wade about the dropping of the three pending charges against Wade at the time of McCall's trial. According to McCall, questioning Wade about the dropping of the charges goes directly to Wade's credibility. If, from Wade's testimony, the jury is persuaded that Wade changed his story because he was expecting some sort of leniency in return for his testimony in favor of the State, Wade's credibility would be irreparably damaged. The circuit court, however, found that questions

relating to the dropping of the charges would unnecessarily waste time and confuse the jury, contrary to Wis. Stat. § 904.03, and the majority agreed. I disagree.

The majority concedes that since Wade was the sole witness for the prosecution, "the accuracy and truthfulness of Wade's testimony were key elements in the State's case." Majority op. at 36. The majority also points out that the inquiry into the dropping of the charges was clearly directed at Wade's credibility as a witness. Moreover, the majority admits that "a defendant's opportunity to explore the subjective motives for the witness's testimony is a necessary ingredient of a meaningful cross-examination." *Id.* at 37 (citing *State v. Lenarchick*, 74 Wis. 2d 425, 448, 247 N.W. 2d 80 (1976)). And yet, having made these concessions, the majority still finds that an inquiry into the dropping of the charges against Wade was properly barred by the circuit court, saying that "(t)he bias evidence which McCall wished to introduce would have unnecessarily directed the jury's attention away from the case under consideration, and would have been unduly prejudicial." *Id.* at 42.

It is inconsistent at best for the majority to say in one part of its opinion that "the accuracy and truthfulness of Wade's testimony were key elements in the State's case," and say in another part of the opinion that this evidence would "unnecessarily direct the jury's attention away from the case . . . ." How can the truthfulness of Wade's testimony be key elements at trial yet cross examination of McCall about the dropping of the three charges unnecessarily direct the jury's attention away from the case? How could this have been, in the words of the majority, "unduly prejudicial" when credibility was the only issue?

In *State v. Lindh*, 161 Wis. 2d 324, 468 N.W.2d 168 (1991), this court concluded that evidence relating to the potential bias of a witness may be excluded if its slight probative value fails to overcome its strong likelihood of confusing the issues and undue delay. The majority cites *Lindh* to support its conclusion that allowing McCall to cross-examine Wade about any possible agreement he had with the State would unnecessarily confuse the issues and waste valuable trial time. However, the majority fails to tell us how such cross-examination would lead to those undesirable results.

Furthermore, *Lindh* actually supports McCall's claim. In *Lindh* we said that in cases where there exists a "prototypical form of bias," i.e., "a situation in which a witness might have or realistically perceive an interest in testifying so as to favor the prosecution," *Lindh*, 161 Wis. 2d at 354, "the possibility of bias, motive and interest of the witness is particularly distinct and immediate." *Id.* at 356.

Where the witness knows that his testimony is of value to the prosecution, and the prosecuting attorneys are the same ones who charged the witness with other crimes, there is a reasonable inference that the witness considers himself to be in a position where his testimony could affect the charges pending against him. In such a situation, a jury might reasonably find that the witness had a motive for testifying favorably for the prosecution. *Id.* at 356-57.

While the witness in *Lindh* did not exhibit a "prototypical form of bias," the witness in this case, Wade, does. The three charges (battery, resisting an officer, and operating a motor vehicle without the owner's consent) pending against Wade were dropped by the prosecutor, the same one prosecuting McCall, immedi-

ately before trial. While the prosecutor claims that the charges were dropped solely because Wade was in a permanent state of paralysis, nothing in the record indicates whether or not Wade himself perceived there to be some sort of deal between himself and the prosecutor.

The majority and the circuit court place emphasis on the benign motives of the prosecutor in dropping the charges. The prosecutor's motives may have been benign, but his motives are irrelevant. What is relevant here is how Wade perceived the situation, not how the prosecutor did.

The jury should have been permitted to see Wade respond to an inquiry into his motives for testifying. If Wade believed that the prosecutor would drop the charges against him in exchange for his testimony, or if Wade believed that the charges could be resurrected if he failed to testify as he did, his credibility could certainly have fallen in the eyes of the jury.

The facts are critical to understanding the basis of my dissent. According to the record, Wade somehow remembered an important fact about the shooting that he could not remember immediately after the shooting. Testimony by police officers who questioned Wade in the hospital suggests that Wade could not remember much at all of what happened the night of the shooting. And yet, when testifying in court, Wade stated that he remembered McCall pushing him up against a wall and putting "something" against his shoulder. This is an extremely important fact because it goes to whether or not McCall was acting in self-defense.

McCall maintains that Wade came after him and that, while Wade was attempting to get the gun away from him, McCall shot Wade in the shoulder. McCall's story is just as plausible, if not more so, than Wade's

story. According to Elvis Winters' testimony, Wade had a habit of drinking heavily and, on the night of the shooting, was drinking heavily and picking fights with people in his building. In addition, Wade's wife testified that Wade often got drunk, and that he had a bad temper.

As for the testimony of Wade himself, it is clear from the record that Wade did not have his story straight. At the trial, Wade remembered some things, but not others, and occasionally contradicted himself. When it comes to believing one witness over the other, Wade's credibility is certainly subject to question. And yet the circuit court, and the majority, seem to feel that the change in Wade's story was insignificant. As I see it, it was most significant.

There are three possible explanations for Wade's sudden recalled memory. First, he may just have remembered. This explanation, however, while possible, hardly seems plausible in light of the testimony given by a number of people regarding Wade's condition on the night of the incident. According to testimony given by Wade's wife, the building security guard, and by Wade himself, Wade had been drinking heavily and smoking crack cocaine that night and was, in the words of a witness, "wasted." It is difficult to imagine that someone in that condition could remember events in such detail. Moreover, it is unlikely that Wade's memory would be better several months later, i.e., at the trial, than it was even one day later, i.e., at the hospital.

The second possible explanation for Wade's recalled memory is that he simply wanted to get back at McCall for something. However, nothing in the record indicates that Wade had any animosity towards

McCall. In fact, the record reflects that the two men had a very amicable relationship.

The third possible reason why Wade suddenly "remembered" is that he perceived he had an interest in testifying favorably for the State in order to receive favorable treatment from the prosecutor for his own crimes. Although other alternatives might exist, this is certainly a highly plausible explanation.

Nothing in the record indicates whether Wade's sudden recalled memory came before or after the prosecutor dropped the three pending charges against him, and we will never know. Since the defense was prohibited from asking Wade what he perceived about the dropping of the charges, the jury was unable to determine whether or not Wade's story was fabricated or at least enhanced in order to receive more lenient treatment for his own crimes from the prosecutor.

The majority quotes the circuit court's reasoning for not allowing cross-examination on this issue, and agrees with the circuit court that this discrepancy as to what Wade remembered is a "very small difference." Majority op. at 39. Small? This discrepancy in Wade's story has an enormous effect on the credibility of McCall's claim of self-defense. If Wade could not remember anything, there would be reason to believe McCall's story. If Wade does remember the attack being unprovoked, McCall's story loses credibility.

How could the issue of whether or not McCall acted in self-defense be characterized as "small?" It is the very issue upon which this case rests!

The majority goes on to state that the "lack of any demonstrable impact of the dismissal of charges on Wade's testimony was but one of the various factors considered by the circuit court in exercising its discretion to limit the scope of cross-examination." *Id.* at 40.

How can the majority say this with such certainty when we have no idea how Wade would have responded under cross-examination? Moreover, the circuit court had no idea how Wade would have responded.

The majority also states that McCall "was unable to offer any proof to substantiate his claim of a clandestine agreement between Wade and the prosecutor." Majority op. at 40. How could he offer any proof when he was denied the opportunity to cross-examine Wade on this issue? Furthermore, whether or not there was an actual agreement between Wade and the prosecutor is irrelevant. What matters is whether or not Wade believed that testifying favorably for the State would help his own situation, and thus compel him to fabricate or enhance his story.

The majority points out that McCall solicited a great deal of information about Wade regarding his character for truthfulness. While this is correct, the problem with the majority's reasoning is that none of the information about Wade's character goes to his motive to fabricate. The essential issue in this case is whether or not McCall acted in self-defense. Wade first stated that he remembered nothing about being shot. He then testified in court, after the charges against him had been dropped, that Wade attacked him unprovoked. The inquiry into what Wade believed about the dropping of the charges is critical to determining whether or not Wade's story about an unprovoked attack is credible.

The circuit court judge erred as a matter of law by not allowing McCall to cross-examine Wade about the dropping of the charges against him. The majority and the circuit court believe that such an inquiry into the dropping of the charges against Wade would confuse the issues and would be both unnecessarily cumulative

54

and a waste of time, contrary to Wis. Stat. § 904.03. The majority and the circuit court are in error.

First, in terms of confusing the issues, I fail to discern how this inquiry would have confused anything, and the majority does not tell us how it would. Wade's response to such an inquiry would merely have affected his credibility one way or the other.

Second, the testimony would not have been unnecessarily cumulative. The majority claims that since we already know who shot Wade, and how he was shot, any further inquiry into the area would be repetitive. But the issue was not "who" or "how," the issue is "why." Allowing the jury to hear whether or not Wade understood there to be an agreement with the prosecutor would go to why Wade was shot, not how or by whom he was shot.

Lastly, this inquiry would not have caused undue delay. It could hardly have taken more than a few short minutes. For something as critical as Wade's motives for testifying, that would have been a few minutes well spent.

Therefore, I would affirm the court of appeals, but on different grounds. I conclude the circuit court misused its discretion under Wis. Stat. § 904.03 by not allowing any inquiry into Wade's motives for testifying as he did. Accordingly, I would not reach the issue of McCall's 6th Amendment Right of Confrontation.