# COURT OF APPEALS
# DECISION
# DATED AND FILED

## October 5, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP607-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2016CF867

IN COURT OF APPEALS
DISTRICT II

---

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

DONNA R. MATTHEWS,

   DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Kenosha County: JODI L. MEIER, Judge. *Affirmed*.

Before Neubauer, Grogan and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Donna R. Matthews appeals from a judgment following a jury conviction for the first-degree intentional homicide of her ex-boyfriend.  She asserts that the trial court violated her Sixth Amendment[1] right to confrontation when it limited cross-examination of her brother, who was facing charges as party to the same crime, and that the court provided a jury instruction related to reasonable doubt that was unconstitutional.  She also appeals denial of her postconviction motion for relief based on ineffective assistance of counsel, asserting that her counsel was deficient when he stipulated to limit her expert's testimony at trial.  Finally, she urges this court to exercise its discretion to reverse her conviction under WIS. STAT. § 752.35 (2019-20),[2] arguing that her battered woman syndrome self-defense was never fully tried.  We determine that none of these arguments warrant reversal or a new trial.  We affirm.

## BACKGROUND

¶2     Matthews was in what she characterizes as an abusive romantic relationship with Michael Gayan for several years before she shot and killed him on July 4, 2016.  Matthews's brother, Derrick, assisted her in the shooting by providing the gun and by driving her to and from Gayan's house, among other things.  After police discovered Gayan's body in late July, the State charged both Matthews and Derrick with Gayan's murder.

¶3     Matthews's case went to trial almost two years later, in late June 2018.  At the trial, Matthews claimed that she acted in self-defense.  She

---

[1] U.S. CONST. amend. VI.

[2] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

testified that Gayan had emotionally abused and stalked her and threatened to kill her and hurt her family if she did not move back to Wisconsin, where he lived, from Hawaii, where she had lived since January 2016. Matthews called multiple relatives and acquaintances who testified that Matthews told them about Gayan's abuse and her fear of him. She also testified that she believed Gayan would kill her or a family member and that she "had to help." In her words, the shooting was "absolute self-defense."

¶4    In support of her defense, Matthews presented testimony from Dr. Darald Hanusa, an expert on battered woman syndrome, a phenomenon suffered by victims of abuse that causes a wide range of symptoms including fear, anger, depression, and sometimes fighting back to protect themselves.[3] The record shows that while Matthews was in jail, before she met with Dr. Hanusa, she obtained and read a book about how to present a defense of battered woman syndrome. She then represented to Dr. Hanusa that she had suffered physical abuse from Gayan when recorded telephone calls from jail and previous text messages established that she had not. In an effort to limit the damage from that evidence, Matthews's trial counsel stipulated that Dr. Hanusa would testify only to educate the jury on battered woman syndrome and its symptoms, and would not offer an opinion as to whether Matthews suffered from it. In exchange, the prosecution agreed that it would not present evidence of Matthews's possibly unsubstantiated, detailed representations of physical abuse to Dr. Hanusa or her review of the book. During the trial, Matthews's counsel drew parallels between

---

[3] These symptoms are also discussed in *Linn v. State*, 929 N.W.2d 717, 740 (Iowa 2019), a case that Matthews discusses in her brief.

the expert testimony of symptoms of battered woman syndrome and Matthews's own testimony of the psychological abuse she suffered from Gayan.

¶5 Matthews's counsel's closing argument pointed to the fact that the State did not offer expert testimony to rebut Dr. Hanusa's testimony on battered woman syndrome. Instead, the prosecution presented the jury with evidence that Matthews did not kill Gayan out of fear for her own or her family's life, but out of anger over humiliating photos of her that Gayan posted on social media (that Matthews characterizes as "revenge porn") and to stop him from posting more offensive content. Matthews's brother, Derrick, cooperated with the State. He testified that Matthews had been planning Gayan's murder for months, that she told him Gayan was threatening to post additional embarrassing content online if she did not go back to Gayan by July 5, 2016, and that she planned to kill Gayan on the Fourth of July so that the gunshots would be mistaken for fireworks. Derrick also recounted the details of the shooting, including Matthews's travel from Hawaii to Wisconsin, and his involvement in providing the gun and driving Matthews to and from Gayan's home that evening. [4]

¶6 In cross-examining Derrick, Matthews's trial counsel asked numerous questions about Derrick's motivation for cooperating with the State. Derrick testified that although the prosecution had not made any explicit promise to him, he was under the impression that it was to his benefit to testify at his sister's trial and that the length of his possible jail term could depend on what the

---

[4] Matthews had snuck back to Kenosha, communicating to Gayan that she was still in Hawaii on the Fourth of July. She then texted Gayan, asking him to go out and take a photograph for her. When he left his house to do so, she snuck in. When he returned, she shot him several times.

4

prosecution recommended, although his judge[5] would have the final say on the appropriate sentence. Defense counsel brought out before the jury the fact that Derrick was charged, as party to a crime, with "the same crime under the same statute or law that [his] sister is" and asked Derrick what he hoped he would receive for a penalty. Sustaining the State's objection, the trial court did not allow further questions on penalties, explaining to counsel in a sidebar: "You cannot discuss penalties for the defendant's charge here in court, and you're not going to backdoor [the information] through this witness ...."

¶7      As well, Matthews made a pretrial objection to the standard jury instruction as to the definition of reasonable doubt that concludes with the following two sentences: "While it is your duty to give the defendant the benefit of every reasonable doubt, you are not to search for doubt. You are to search for the truth." WIS JI—CRIMINAL 140. She argued that these sentences unconstitutionally dilute the reasonable doubt standard. The trial court nevertheless used the standard instruction, explaining that it "does accurately represent and fairly represent and un-prejudicially represent[] what the law is and what the burden of proof is."

¶8      Ultimately, the jury convicted Matthews, and the trial court later denied her motion for postconviction relief based on ineffective assistance of counsel. This appeal followed, raising the four issues of whether the trial court violated Matthews's rights under the confrontation clause, whether its jury instruction on reasonable doubt was constitutional, whether Matthews's trial

---

[5] Derrick's trial was severed from Matthews's and he was to decide on whether to enter a plea following his sister's trial.

counsel was ineffective, and whether this court should exercise its discretion to reverse in the interest of justice.

## DISCUSSION

### I.    Confrontation Clause

¶9      Matthews's first argument on appeal is based on the trial court's decision to limit cross-examination of her codefendant, her brother Derrick, who cooperated with the State by testifying at her trial.  Matthews asserts that the court's refusal to allow questioning about Derrick's potential penalty for the charges he was facing—the same charges for which she was on trial—prevented her from exposing Derrick's bias and violated her right to confrontation guaranteed by the Sixth Amendment of the United States Constitution and article I, section 7 of the Wisconsin Constitution.[6]  As articulated in *State v. Lenarchick*, the primary case Matthews relies upon, the confrontation clause requires that a defendant have an opportunity to conduct a meaningful cross-examination that "bring[s] out the motives of state witnesses," including an opportunity to show that "the witness may have expected leniency or immunity from prosecution if he gave testimony in favor of the state." 74 Wis. 2d 425, 446-47, 247 N.W.2d 80 (1976) (citation omitted).

¶10     A trial court has discretion in limiting evidence, including testimony on cross-examination.  *State v. Rhodes*, 2011 WI 73, ¶22, 336 Wis. 2d 64, 799

---

[6] The parties dispute whether this argument is preserved for appeal because Matthews's counsel did not specifically mention the confrontation clause at trial.  Because we conclude there is no violation of the confrontation clause, as discussed below, we do not address the potential forfeiture issue.

N.W.2d 850. We reverse a trial court only if it erroneously exercised its discretion by failing to rely on the appropriate and applicable law in determining whether to limit cross-examination. *Id.*, ¶25. We review de novo the question of whether the trial court relied on the appropriate and applicable law—in this context, the constitutional right accorded under the confrontation clause. *See id.*

¶11 Citing case law from the United States Supreme Court, our supreme court has made clear that "the right to cross-examination is not absolute." *Rhodes*, 336 Wis. 2d 64, ¶34 (citing *Maryland v. Craig*, 497 U.S. 836, 850 (1990)). The confrontation clause does not prevent a trial court from imposing some limits on a defendant's inquiry into the potential bias of a prosecution witness. *Rhodes*, 336 Wis. 2d 64, ¶39 (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)). "On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination" when they have concerns that it might insert undue prejudice into the jury's decision-making. *Rhodes*, 336 Wis. 2d 64, ¶¶39-40 (quoting *Van Arsdall*, 475 U.S. at 679); *State v. McCall*, 202 Wis. 2d 29, 44-45, 549 N.W.2d 418 (1996). The court is to balance the probative value of any excluded evidence against the danger of inserting such undue prejudice. *Rhodes*, 336 Wis. 2d 64, ¶46.

¶12 Here, the trial court explained to counsel its reason for cutting off cross-examination where it did: telling the jury what Derrick's potential sentence would be for first-degree intentional homicide would reveal to the jury Matthews's potential sentence for the same crime. This concern that the defendant's potential sentence would unduly prejudice the jury's decision-making is legitimate. *See United States v. Lewis*, 110 F.3d 417, 422 (7th Cir. 1997) ("[U]nless a jury has a role in sentencing ... jurors should be instructed not to consider a defendant's

potential sentence during deliberations.") (citing **Shannon v. United States**, 512 U.S. 573, 579 (1994)).

¶13 Also, "the record indicate[s] the defendant was able to present other evidence to give the jury reason to discredit [Derrick's] testimony." *See Rhodes*, 336 Wis. 2d 64, ¶47. Unlike **Lenarchick**, where cross-examination of the defendant's accomplice was limited to the sole question of whether any promises had been made by the state in exchange for his testimony, the trial court allowed (and Matthews's counsel conducted) a robust examination of Derrick's motivation to testify and his potential for bias. *See Lenarchick*, 74 Wis. 2d at 446 (holding that questioning broader than whether the state had made specific promises should have been allowed, including questions about whether the witness hoped or expected the state to reward him). The jury in this case heard that the State "ask[ed Derrick] to testify" and that he was "hoping" things would be better for him if he did precisely that.

¶14 The trial court applied the appropriate law to balance Matthews's rights under the confrontation clause—ensuring that she had an opportunity to expose Derrick's potential bias—with the danger of inserting undue prejudice to the jury's decision-making by allowing it to hear testimony about Derrick's (and therefore Matthews's) potential penalty for Gayan's murder. The court had a reasonable basis for exercising its discretion to exclude this testimony. *See McCall*, 202 Wis. 2d at 36. We conclude, therefore, that the trial court did not erroneously exercise its discretion in limiting Matthews's cross-examination of Derrick, and we affirm on this issue.

## II.     Jury Instruction

¶15     Matthews next argues that the trial court committed another constitutional violation by instructing the jury on "reasonable doubt" pursuant to the standard instruction that tells the jury "not to search for doubt" but rather to "search for the truth."

¶16     We review de novo the question of whether jury instructions accurately state the law applicable to the facts of a case.  *State v. Fonte*, 2005 WI 77, ¶9, 281 Wis. 2d 654, 698 N.W.2d 594.  Even Matthews concedes that we are bound by the Wisconsin Supreme Court's holding in *State v. Trammell* that the exact same jury instruction was constitutional.  2019 WI 59, ¶51, 387 Wis. 2d 156, 928 N.W.2d 564.  The supreme court rejected the very same argument Matthews makes here and held that "[t]he search for the truth language does not lower the burden for the State."  *Id.*  Thus, we also affirm the trial court on this issue.

## III.    Ineffective Assistance of Counsel

¶17     We now turn to Matthews's appeal from the trial court's denial of her postconviction motion, in which she argued that her trial counsel's stipulation regarding her expert's testimony amounted to ineffective assistance.  According to Matthews, her trial counsel's decision to forgo having Dr. Hanusa testify that her symptoms were consistent with battered woman syndrome in exchange for the State's agreement not to cross-examine Dr. Hanusa regarding Matthews's representations of physical abuse to him or her review of the book on battered woman syndrome while in jail gave her "the short end of the stick" and was "objectively unreasonable."  She further argues that the odds of acquittal had the jury heard her expert's opinion on her symptoms were "better than negligible."

9

¶18 Whether trial counsel was ineffective is a mixed question of law and fact. *State v. Manuel*, 2005 WI 75, ¶26, 281 Wis. 2d 554, 697 N.W.2d 811. We will not disturb the trial court's findings of fact unless they are clearly erroneous; but whether trial counsel's performance is constitutionally deficient is a question of law we review de novo. *Id.*

¶19 Defendants asserting ineffective assistance of counsel bear the burden of proving both prongs of the two-prong *Strickland*[7] test adopted in Wisconsin in *State v. Mayo*, 2007 WI 78, ¶¶33, 60, 301 Wis. 2d 642, 734 N.W.2d 115. First, defendants must show that their counsel's performance was deficient or "fell below an objective standard of reasonableness" considering all of the circumstances. *State v. Romero-Georgana*, 2014 WI 83, ¶40, 360 Wis. 2d 522, 849 N.W.2d 668 (quoting *Strickland*, 466 U.S. 668, 688 (1984)). There is a "wide range of professionally competent assistance," and we must be mindful of a "strong presumption" that counsel acted reasonably. *Strickland*, 466 U.S. at 689-90.

¶20 Second, defendants must show that they were prejudiced as a result of their counsel's deficient performance. *Id.* at 691-92. To demonstrate prejudice, defendants must show that, but for counsel's errors, there is a "reasonable probability" that their result would have been different. *Id.* at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011).

---

[7] *Strickland v. Washington*, 466 U.S. 668, 688 (1984).

¶21     Matthews has not met her burden with respect to either prong of the *Strickland* test.  First, it was not unreasonable to stipulate to limit Dr. Hanusa's testimony.  Although Matthews now disputes the fairness of the quid pro quo, we conclude that the stipulation was an objectively reasonable attempt to keep extremely unhelpful evidence from the jury while still using Matthews's expert to her advantage at trial.  Evidence of Matthews's representations that were squarely refuted by her own telephone calls and texts would likely diminish her credibility significantly; and maintaining her credibility was very important to her claim of self-defense.  It would also diminish the value of any testimony her expert could have given regarding how her symptoms compared with those of a battered woman given that the jury would have heard that Dr. Hanusa's conclusions had been based, at least in part, on untruthful information from Matthews.  Finally, absent the stipulation, evidence of Matthews's review of the book on presenting a battered woman syndrome defense could have led the jury to conclude that Matthews was trying to deceive it or to fake her way to being perceived as a battered woman.

¶22     This point bears on the second prong of the *Strickland* test.  It is almost inconceivable, let alone reasonably probable, to imagine this case coming out better for Matthews without the stipulation.  *See Strickland*, 466 U.S. at 694.  We conclude that, had the jury heard her expert's diagnosis that she suffered from battered woman syndrome—when that opinion would have been attacked by virtue of Matthews's possible misrepresentations to Dr. Hanusa—along with the other damaging evidence that her trial counsel stipulated to exclude, Matthews would have been harmed more than she would have been helped; accordingly, we affirm on this issue.

### IV. Reversal in the Interest of Justice.

¶23 Finally, Matthews urges this court to exercise its statutory authority under WIS. STAT. § 752.35 to grant a new trial in the interest of justice. She asserts that "[t]he real controversy here was whether [she] was suffering from battered woman syndrome which could justify her fatal act of self-defense" and that this issue was not fully tried due to what she calls the State's "mischaracterization of battered woman syndrome" and its "jury argument on the issue of revenge porn as motive." *See* § 752.35 (giving this court the power to reverse "if it appears from the record that the real controversy has not been fully tried").

¶24 This court may exercise its power of discretionary reversal under WIS. STAT. § 752.35 when, among other things, the erroneous admission or exclusion of evidence leads to a conclusion that an issue was not "fully or properly tried." *Vollmer v. Luety*, 156 Wis. 2d 1, 19-20, 456 N.W.2d 797 (1990). This is a formidable statutory power and we exercise it "infrequently and judiciously." *State v. Avery*, 2013 WI 13, ¶38, 345 Wis. 2d 407, 826 N.W.2d 60.

¶25 Matthews does not seem to argue that the stipulated limitation on her expert's testimony is the problem—an argument that would fail at least for the reason that, as discussed above, this testimony was not erroneously excluded. *See State v. Arredondo*, 2004 WI App 7, ¶56, 269 Wis. 2d 369, 674 N.W.2d 647 (declining to reverse in the interest of justice based on the cumulative effect of alleged errors, including ineffective assistance of counsel, when the arguments regarding each alleged error were rejected). But Matthews does not provide any support for her argument that the two things she points out—the prosecution's statement in its closing argument that being a battered woman "doesn't give you

carte blanche to kill another person" and the prosecution's cross-examination of Matthews questioning why she could not ignore Gayan's harassment—deprived her of her right to a full trial on her defense.

¶26   The State did not call its own expert to testify about battered woman syndrome.  Matthews presented her defense with an expert testifying about the symptoms of battered woman syndrome, including testimony about why battered women may not be able to leave their abusers, and her own account of her symptoms and Gayan's abuse.  Thanks to the stipulation discussed above, Matthews was able to elicit this testimony without having to admit that she read up on how to present her defense while incarcerated and that she may have lied to Dr. Hanusa.  That the jury did not accept her defense does not mean it was not fully and fairly presented.  We decline to exercise our discretion to reverse in this case.

## CONCLUSION

¶27   For all of the foregoing reasons, we affirm the trial court's judgment of conviction and the order denying Matthews's postconviction motion for relief.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.