COURT OF APPEALS
DECISION
DATED AND FILED

July 16, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP119-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2020CF478

IN COURT OF APPEALS
DISTRICT II

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

VICTOR D. AVILES,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment and orders of the circuit court for Waukesha County: WILLIAM J. DOMINA, Judge. *Affirmed*.

Before Gundrum, P.J., Neubauer, and Grogan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.  Victor D. Aviles, pro se, appeals from a judgment of conviction and orders denying his motions for postconviction relief.[1]  Aviles argues that the trial court violated his right to present a defense in not allowing two of Aviles' proffered witnesses to testify to specific acts at trial, violated his right to confrontation by ruling that on cross-examination Aviles could not replay in its entirety body camera footage that had been played on direct examination, and erred in entering a judgment of conviction due to insufficient evidence of Aviles' guilt.  Aviles also asserts that he is entitled to a new trial in the interest of justice.  We reject Aviles' arguments and affirm.

## BACKGROUND

¶2     The parties do not dispute the following relevant facts.

¶3     Aviles was stopped by Deputy ML for speeding and a lane violation.  At trial, Aviles testified that as ML approached Aviles' driver's side window, "I stuck my head out the window at this time, and I said, what the fuck do you want?"  Aviles felt that he was "being compliant" with law enforcement, albeit "at the bare minimum level."  Aviles said that ML introduced himself to Aviles, to which Aviles responded, "why the fuck am I pulled over?"  When ML replied that it was for "speeding and going over the center line," Aviles called ML a "fucking asshole," remarked "that's fucking bull shit," and blamed ML for causing Aviles' traffic violations.

---

[1] The Hon. Jennifer R. Dorow presided over pretrial proceedings, the jury trial, and the sentencing hearing.  The Hon. William J. Domina ruled on the motions for postconviction relief.

¶4      Officers later learned Aviles' driver's license was revoked, though Aviles knew the law prohibited him from driving before he decided to do so that night.   When ML asked Aviles for his license, Aviles "threw it at him in a Frisbee-like motion [and] on the first attempt, hit him in the chest."   Aviles leaned out the driver's door to pick the license up off the ground, threw it at ML again, and picked it back up.   He did this at least four times.   When ML stated that he did not want to pick the license up from the ground because it would place him in a vulnerable position, Aviles threatened: "[I]f I wanted to hurt you, I'd hurt you."

¶5      Eventually ML kicked the driver's license toward his squad car. Aviles stepped out of his vehicle without permission and approached ML.   ML ordered Aviles to return to the car and tried to push him away to maintain a safe distance but Aviles grabbed ML, and a physical fight ensued.   ML suffered a head injury when Aviles tackled him, bringing ML to the pavement and causing his "head [to] slam[] into the concrete on the road."   ML also was stabbed in the arm during the fight, though he did not recall having seen a knife during the struggle.

¶6      A second deputy, MS, arrived on scene in response to ML's call for backup.   MS tore his meniscus after intervening in the fight to help ML, who "was trying to survive" the clash with Aviles.   During the altercation, Aviles tried to grab ML's gun, but thankfully the gun was in a safety holster with special features to secure it.   It took multiple officers from various law enforcement agencies to eventually subdue Aviles and take him into custody.

¶7      Aviles represented himself at his jury trial.   As pertinent to this case, Aviles named two citizen witnesses on the defense witness list.   Aviles sought to call his former boss, who would have testified as to the reason Aviles' license was suspended (a prior OWI conviction) and why it was not yet reinstated at the time

of the traffic stop at issue. The trial court explained that the reason his license was suspended was not relevant and, moreover, getting into the prior OWI would be highly prejudicial to Aviles. Aviles also sought to introduce testimony from a friend who would have testified that he was in the car with Aviles during two prior OWI traffic stops and Aviles did not engage in violence against police officers during those OWI stops. The trial court ruled that Aviles' "witnesses will be allowed to be asked by [Aviles], regarding your -- their opinion of [his] reputation on the character for truthfulness or untruthfulness[,]" but ruled that specific instances of Aviles' conduct unrelated to the night in question were neither relevant nor admissible. Aviles did not call either of these witnesses at trial.

¶8 Following three days of trial, the jury found Aviles guilty of substantial battery, battery to a law enforcement officer, attempt to disarm a peace officer, resisting an officer causing a soft tissue injury, and obstructing an officer, but found him not guilty of the charged "use of a dangerous weapon" enhancers. He was sentenced to a total of four years of initial confinement and three and one-half years of extended supervision.

¶9 Aviles moved for postconviction relief. He argued that the trial court denied him his right to present a defense by not allowing him to call his two witnesses to testify as to Aviles' specific past conduct to explain why Aviles was driving with a suspended license and that Aviles had been subject to two prior OWI stops that did not turn violent. Aviles also argued that the court violated his right to confrontation by not allowing him to replay in its entirety an officer's already-played body camera footage of the incident during cross-examination, although the court did assure Aviles that he could replay the footage during closing arguments. The postconviction court denied the motion without an evidentiary hearing. Aviles now appeals.

## DISCUSSION

¶10   Although he has abandoned some issues, Aviles raises many of the same arguments on appeal that the postconviction court rejected.  Specifically, he argues the trial court's exclusion of his citizen witnesses violated his right to present a defense.  He further argues the court's limitations on his right to replay body camera footage on cross-examination violated his right to confrontation; the evidence presented at trial was insufficient to support the jury's verdicts; and he is entitled to a new trial in the interest of justice.  We address Aviles' arguments in turn below.

*Right to present a defense*

¶11   Aviles argues that the trial court erroneously exercised its discretion by excluding two witnesses from testifying at trial regarding specific instances of Aviles' past conduct because it denied him his right to present a defense. Although we review a trial court's admission or exclusion of evidence for an erroneous exercise of discretion, we analyze de novo whether a trial court's exclusion of evidence deprived a defendant in a criminal case of his constitutional right to present a defense.  ***State v. Wilson***, 2015 WI 48, ¶47, 362 Wis. 2d 193, 864 N.W.2d 52.

¶12   The admission of evidence is subject to "the application of evidentiary rules that themselves serve the interests of fairness and reliability— even if the defendant would prefer to see that evidence admitted."  ***Crane v. Kentucky***, 476 U.S. 683, 690 (1986).  Trial courts have "'wide latitude' to exclude evidence that is 'repetitive ..., only marginally relevant,' or poses an undue risk of 'harassment, prejudice, [or] confusion of the issues.'"  ***Id.*** at 689-90 (citation omitted; omission in original).  The relevance of the proffered evidence must not

be "substantially outweighed by its prejudicial effect." ***State v. Pulizzano***, 155 Wis. 2d 633, 646, 456 N.W.2d 325 (1990). For the reasons explained below, the trial court did not violate Aviles' constitutional right to present a defense.

¶13 Aviles maintains on appeal that the trial court erred in refusing to allow him to introduce character evidence, through two citizen witnesses, about specific acts from incidents that had occurred well before the traffic stop underlying this appeal. He argues that "[t]his ruling violated the defendant's compulsory process right and right to a fair trial."

¶14 We first note that the trial court did not, as Aviles' briefing implies, exclude his witnesses from testifying entirely at trial. Instead, the court ruled that it would allow Aviles, through his named witnesses, to offer testimony that Aviles had a reputation for being truthful. The court simply ruled that it would not allow Aviles' witnesses to testify to "improper character evidence of what we call conformity evidence" because "it's not proper evidence of motive or intent or really in this case, lack of intent." The court found that Aviles sought to admit the testimony regarding the specific acts "to show that [he] could not act the way that is accused because on a prior occasion [he] didn't do that." The court's ruling limited the content of the proffered testimony to ensure that Aviles offered only relevant and permissible evidence, but did not exclude the witnesses from testifying. Our review is therefore limited to whether the exclusion of testimony regarding specific acts showing a lack of violence was an erroneous exercise of discretion.

¶15 Aviles argues that the trial court ruling prohibiting his witnesses from offering conformity evidence violated his right to present a defense. He asserts that the evidence was relevant and "critical to his defense." The court

disagreed and found the proffered testimony would not be relevant and would be prejudicial to the defense. The court determined that any probative value the witnesses' testimony had would be substantially outweighed by the danger of confusing the issues, misleading the jury, and wasting court time.

¶16 Defendants have a constitutional right to present a defense and confront witnesses, but these rights protect only "present[ing] relevant evidence that is 'not substantially outweighed by its prejudicial effects.'" ***State v. Sarfraz***, 2014 WI 78, ¶37, 356 Wis. 2d 460, 851 N.W.2d 235 (citation omitted). Relevant evidence has "any tendency to make the existence of any fact that is of consequence" more or less probable. WIS. STAT. § 904.01 (2023-24).[2] WISCONSIN STAT. § 904.03 provides that relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

¶17 The trial court did not erroneously exercise its discretion by limiting the testimony Aviles' could offer through his trial witnesses. The court considered the applicable law, applied the pertinent facts, and reached a reasonable determination. *See* ***State v. Payano***, 2009 WI 86, ¶51, 320 Wis. 2d 348, 768 N.W.2d 832. Neither of the character witnesses had any information pertaining to the traffic stop in question. They were not in Aviles' vehicle that night and did not witness his behavior toward ML, MS, or any other members of law enforcement that evening. Neither witness had any relevant information, and the information that Aviles' sought to evoke from them would have necessarily informed the jury

---

[2] All references to the Wisconsin Statutes are to the 2023-24 version.

that Aviles had previous brushes with the law. It would have been cumulative because Aviles testified to this information at trial despite the court's ruling, and it was irrelevant, prejudicial, and not erroneously excluded. Evidence must be relevant and not unduly prejudicial. If the witnesses had no evidence regarding the incident at issue, then their testimony could not be relevant. Excluding evidence that was irrelevant does not violate Aviles' right to present a defense.

*Right to confrontation through cross-examination*

¶18     Aviles next takes issue with the trial court's ruling that he could not replay during cross-examination the body camera footage that had been played on direct examination unless he offered it for a permitted purpose. We will not disturb the court's "decision to admit or exclude evidence unless the [trial] court erroneously exercised its discretion." *Weborg v. Jenny*, 2012 WI 67, ¶41, 341 Wis. 2d 668, 816 N.W.2d 191. In reviewing a discretionary determination, we consider "whether the [trial] court 'reviewed the relevant facts; applied a proper standard of law; and using a rational process, reached a reasonable conclusion.'" *State v. Rhodes*, 2011 WI 73, ¶22, 336 Wis. 2d 64, 799 N.W.2d 850 (citation omitted). An erroneous exercise of discretion by the trial court does not warrant a new trial if the error was harmless. *State v. Harris*, 2008 WI 15, ¶85, 307 Wis. 2d 555, 745 N.W.2d 397.

¶19     "[A] reviewing court should reverse the [trial] court if it determines that the discretionary decision to limit cross-examination did not rely on the appropriate and applicable law." *Rhodes*, 336 Wis. 2d 64, ¶25 (citing *State v. McCall*, 202 Wis. 2d 29, 36 & n.5, 549 N.W.2d 418 (1996)). Here, the "appropriate and applicable law" is the Confrontation Clause of the Sixth Amendment. *See Rhodes*, 336 Wis. 2d 64, ¶25. "Whether the [trial] court relied

on the appropriate and applicable law is, by definition, a question of law that we review de novo." *Id.*

¶20 "The Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a criminal prosecution 'to be confronted with the witnesses against him.'" *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986). "Confrontation means more than being allowed to confront the witness physically." *Davis v. Alaska*, 415 U.S. 308, 315 (1974) (citation omitted). The "primary interest" the confrontation clause secures "is the right of cross-examination." *Id.* The Confrontation Clause does not bar a trial court from imposing "reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Van Arsdall*, 475 U.S. at 679. "[T]he fundamental inquiry in deciding whether the right of confrontation was violated is whether the defendant had the opportunity for effective cross-examination." *State v. Hoover*, 2003 WI App 117, ¶21, 265 Wis. 2d 607, 666 N.W.2d 74.

¶21 Aviles argues that he should have been able to use the body camera footage to impeach one of the testifying officers by arguing that, contrary to the officer's testimony, Aviles did not believe he resisted the officers' attempt to handcuff him. During the State's direct examination of the officer, the jury watched the footage Aviles says it should have been able to watch again on cross-examination. Again, the question is whether Aviles had the opportunity for effective cross-examination. *See Van Arsdall*, 475 U.S. at 679. He did. Aviles was free to cross-examine the officer about any aspect of the video that the jury had just watched, as he was free to cross-examine any witness on any topic of relevance to the trial.

¶22 Further, the trial court did not prevent Aviles from replaying the footage. Instead, the court merely prevented him from replaying the footage during his cross-examination of the officer just "for the sake of replaying it." The court told Aviles he could replay the footage during cross-examination if he could articulate a valid purpose for doing so. He could not. The court also informed Aviles that he was welcome to replay the footage during closing argument if he wanted to, and could use it to point out any alleged inconsistencies in the officers' testimony. Aviles did not take the court up on this offer.

¶23 We conclude that Aviles had an opportunity to effectively cross-examine the officer based on body camera footage that had already played once and that he would have been allowed to play a second time during his closing argument. Therefore, his right to confrontation was not violated. *Rhodes*, 336 Wis. 2d 64, ¶48.

*Sufficiency of the evidence*

¶24 We now address whether there is any arguable merit to a claim that the verdicts were not supported by sufficient evidence. We view the evidence in the light most favorable to the verdict, and if more than one inference can be drawn from the evidence, we must accept the one drawn by the jury. *See State v. Poellinger*, 153 Wis. 2d 493, 504, 451 N.W.2d 752 (1990). The verdicts "'will be overturned only if, viewing the evidence most favorably to the state and the conviction, it is inherently or patently incredible, or so lacking in probative value that no jury could have found guilt beyond a reasonable doubt.'" *State v. Alles*, 106 Wis. 2d 368, 376–77, 316 N.W.2d 378 (1982) (citation omitted).

¶25 The jury is the sole arbiter of witness credibility, and it alone is charged with the weighing of the evidence. *See Poellinger*, 153 Wis. 2d at 506.

10

The jury has the power to accept one portion of a witness' testimony while rejecting another—that is, a jury can find that a witness is partially truthful and partially untruthful. *See* ***O'Connell v. Schrader***, 145 Wis. 2d 554, 557, 427 N.W.2d 152 (Ct. App. 1988). "This court will only substitute its judgment for that of the trier of fact when the fact finder relied upon evidence that was inherently or patently incredible—that kind of evidence which conflicts with the laws of nature or with fully-established or conceded facts." ***State v. Tarantino***, 157 Wis. 2d 199, 218, 458 N.W.2d 582 (Ct. App. 1990).

¶26     The facts in support of Aviles' conviction have been set forth above and we need not repeat them here. Much of the evidence was testimonial. ML and Aviles both provided the jury with fairly consistent accounts of what happened, though Aviles insisted on telling the jury that ML and the other officers were at fault—not Aviles. The testifying officers all told stories consistent with one another regarding Aviles' behavior after they arrived on scene. Again, Aviles tried to shift the blame away from himself and convince the jury that he was credible and the officers were all fabricating their testimony. It is within the province of the jury to weigh witness credibility, and the fact that the jury found the other witnesses' testimony more credible than Aviles' does not warrant reversal.

¶27     In addition to the testimony from law enforcement officers and Aviles, there was body camera footage of portions of the incident, evidence placing Aviles' DNA on the knife found at the scene, and testimony from a citizen eyewitness who had called 911 out of concern for officer safety and described the scuffle to the dispatcher. Despite Aviles' advocacy, there was ample evidence presented to support his guilt. "If any possibility exists that the trier of fact could have drawn the appropriate inferences from the evidence adduced at trial to find

11

the requisite guilt," this court "may not overturn a verdict even if it believes that the trier of fact should not have found guilt based on the evidence before it." *Poellinger*, 153 Wis. 2d at 507. As noted, the evidence against Aviles at trial was overwhelming and the inferences the jury drew from that evidence supported its findings of guilt. The evidence was more than sufficient for a reasonable jury to have found Aviles guilty on all five charged counts. *See id.* Accordingly, we reject his challenge to the sufficiency of the evidence would lack arguable merit.

*New trial in the interest of justice*

¶28 Aviles argues that, even if he was not deprived of his due process right to present a defense or his right to confrontation, this court should exercise its discretion to grant him a new trial in the interest of justice because the real controversy was not tried. He contends that "[t]he accumulating effect of all these [evidentiary rulings] greatly stripped the defense." *See State v. Hicks*, 202 Wis. 2d 150, 159-60, 549 N.W.2d 435 (1996) ("a new trial may be ordered ... whenever the real controversy has not been fully tried ...."); *see also* WIS. STAT. § 751.06. We disagree. Aviles had the opportunity to cross-examine the officers as to their observations and any inconsistencies between what they observed and the information in the video footage and police reports. Aviles also presented, through his own testimony, the evidence that his proposed witnesses would have offered regarding his cooperativeness during prior police interactions and his mood in the hours before the stop. Nothing before us indicates that the real controversy was not fully tried or that a new trial is warranted. We affirm.

**CONCLUSION**

¶29 For the foregoing reasons, we conclude that none of the issues raised by Aviles in this appeal entitle him to a new trial. There is no validity to his

arguments that he was denied his rights to present a defense and confront witnesses against him. The trial court bent over backwards to ensure Aviles received a fair trial. Aviles also provides no basis on which we could overturn the jury's verdict based on insufficient evidence. As discussed above, there was ample evidence presented to the jury to support its verdict. The jury found the testimony of the law enforcement officers and DNA analyst to be more credible than Aviles' testimony. Aviles has not persuaded us that the overwhelming evidence against him was insufficient to support the jury's verdicts, nor that the interests of justice demand a new trial. We therefore affirm the judgment of conviction and orders denying postconviction relief.

*By the Court.*—Judgment and orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.