COURT OF APPEALS
DECISION
DATED AND FILED

November 17, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing.  If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.  *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP761-CR**

Cir. Ct. No. **2016CF716**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

BRUCE TERRELL DAVIS,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Milwaukee County: WILLIAM S. POCAN, Judge. *Affirmed*.

Before Brash, P.J., Dugan and Donald, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Bruce Terrell Davis appeals the judgment convicting him, upon the jury's guilty verdicts, of armed robbery with threat of force and burglary of a building or dwelling.

¶2     Davis argues that the trial court denied Davis his right to confrontation by not allowing trial counsel to fully cross-examine one of the State's witnesses, D.V. We are not persuaded and, therefore, we affirm the judgment.

## BACKGROUND

¶3     On August 21, 2015, a masked man broke into B.B.'s home in Wauwatosa and robbed him at gunpoint. B.B. reported that, among other things, the man stole his iPhones. After the robbery, B.B. showed police photos that appeared on his iCloud account that he had not taken.

¶4     One of the photos depicted an address on a piece of mail, which led police to the home of Isiah Lee, Davis's brother. While at Lee's home, police learned that Davis also lived there. Lee told police that he had packed all of Davis's property that had been in Davis's room into a bag and took it to Lee's aunt's home. Police went to Lee's aunt's house, recovered the bag, and found some of B.B.'s stolen property in the bag.

¶5     Later, D.V., an inmate, contacted police claiming that his cellmate, Davis, told him about details of the robbery. D.V. told police that Davis told him, among other details of the robbery, that he hid some of the stolen property at

Davis's grandmother's house.[1]  Police then went to Davis's grandmother's house where they discovered more of B.B.'s property, as well as a B.B. gun.

¶6  The State charged Davis with one count of armed robbery with threat of force and burglary of a building or dwelling.[2]  The matter proceeded to a four day jury trial commencing on April 3, 2017.

¶7  On the second day of the trial, before D.V. testified, trial counsel sought the trial court's permission to question D.V. about the details of D.V.'s two pending felonies.  He argued that he wanted to focus on D.V.'s motivation for consideration in those cases because he was facing significant penalties in those cases.[3]  Trial counsel also argued that he was entitled to cross-examine D.V. regarding D.V.'s eight prior convictions, D.V.'s statements on his need for drug treatment, and his desire to obtain that treatment as part of the consideration he would receive for testifying.  He summarized his argument by stating that someone who is facing that type of time with D.V.'s prior record has much more incentive to fashion his testimony in a way that would please the State than someone who is facing a minor misdemeanor charge.  Trial counsel argued that this information would show D.V.'s bias and motive to testify falsely.

---

[1]  At times, D.V. and other witnesses refer to the same person as Davis's grandmother and great-grandmother.  We refer to her throughout this decision as grandmother.

[2]  The State originally charged Davis with one count of armed robbery and one count of armed burglary, but subsequently amended the charges to those stated above.

[3]  The State informed the trial court that D.V. had pled guilty to one count of robbery use of force, which had a maximum period of imprisonment of fifteen years, and one count of theft, which had a maximum period of imprisonment of three and one half years, in front of this same trial court that was presiding over Davis's case and that D.V. was awaiting sentencing.  The theft charge was amended from the original charge of burglary.

¶8      The State objected to trial counsel's request to introduce the details of D.V.'s charges.  It argued that such information would open the door for the defense to argue that D.V. was actually the robber in this case because he was convicted of robbery before and, therefore, he did it again in this case, which is why he knows the details of this robbery.[4]  Trial counsel disclaimed that he was arguing that D.V. was the robber in this instance and argued that D.V.'s convictions for burglary and robbery are instances of untruthful conduct and, therefore, admissible to impeach D.V.[5]

¶9      The trial court stated that it had to balance Davis's right to attack D.V.'s credibility and bias with the danger of distracting the jury with basically a trial within a trial as to what happened or did not happen in D.V.'s pending felony cases.  The trial court denied in part and granted in part Davis's motion.  It did not allow cross-examination of the details of D.V.'s pending charges, nor the specific maximum penalties he was facing on those charges.  However, the trial court did rule that, on cross-examination, trial counsel could ask D.V. about the number of times he was convicted of crimes, that D.V. was awaiting sentencing for two felony charges where he was facing significant prison time, and that D.V. sought drug treatment as part of his consideration from the State.

---

[4]  In his opening statement, trial counsel stated "that the only natural suspect, the man that [the witness] saw outside the house, early in the morning hours … just before … the robbery, is a witness who does not match [Davis's] description."  We note that the only possible witness that trial counsel could have been referring to was D.V.

[5]  Davis does not make this argument on appeal.  An issue raised in the trial court, but not raised on appeal, is deemed abandoned.  *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 491, 588 N.W.2d 285 (Ct. App. 1998).

¶10 The State called numerous witnesses to testify. B.B. testified about the robbery, the property that was taken, and the photos that appeared in his iCloud account. Officers testified about their investigation and the recovery of some of the property stolen from B.B. as described above. Lee testified that Davis lived with him and that Lee had packed Davis's property into a black plastic bag that Lee took to his aunt's house.

¶11 D.V. testified, and on direct examination, he testified that he had two pending felony cases in Milwaukee County for which he was "facing significant prison time." The State also introduced the consideration letter that it provided to D.V., which explained that the State would not give D.V. any specific consideration in his pending cases but would inform the sentencing court of his testimony in Davis's case. The letter required that D.V. provide truthful testimony and stated that if he gave any false, incomplete, or misleading information, those "statements may be used against [him] in a prosecution."

¶12 D.V. then testified about the details of what Davis told him. D.V. explained that he and Davis were cellmates at the Milwaukee Secure Detention Facility. He testified that during that time, Davis told him "about a home invasion ... in Wauwatosa" that Davis committed in August 2015. D.V. stated that Davis told him that Davis had "kicked the door in" during "the early morning hours" and that he had a gun with him. He said that Davis told him that Davis had stolen "[a] Michael Kors watch, two (2) I-Phones, two (2) laptops, and some cash." D.V. also testified that Davis told him about "changing his voice" during a lineup "so they wouldn't recognize [him] because he wore a mask during the robbery."

¶13 D.V. also testified that Davis told him that, after the robbery, "he was trying to get a battery for one (1) of the laptops" so he unlocked one of the iPhones "and took a picture of the battery and sent it" to someone. Davis provided D.V. with the code he used to unlock the iPhone—2580. D.V. testified that Davis also told him that he spent the money and placed the other property in a book bag that he kept at his brother's place, but that he later moved some of the property to his aunt's house and "to his grandmother's house."

¶14 On cross-examination, trial counsel questioned D.V. extensively about his motivations for falsifying his testimony.[6]

¶15 Following the conclusion of D.V.'s testimony, defense counsel moved for a mistrial. Trial counsel claimed that the trial court had erroneously limited his cross-examination of D.V.

¶16 The State responded that trial counsel had been able to cross-examine D.V. as to his prior convictions, his drug addiction, and his history of untruthful conduct, and that allowing trial counsel to inquire into the details of D.V.'s robbery and burglary charges "would have been unfairly prejudicial," and "essentially" placed D.V. on trial for the robbery of B.B. after trial counsel's opening statement.

¶17 The trial court explained that those "were issues that [the court] dealt with before [D.V.] testified," reiterated its prior ruling, and denied the motion for a mistrial.

---

[6] Further details about the scope of trial counsel's cross-examination are discussed below.

¶18    The State presented other evidence supporting D.V.'s testimony. Kristina Shemitis, a former supervising officer at the Milwaukee Secure Detention Facility, testified that Davis was housed with D.V.  Detective Joe Roy testified that, after D.V. contacted him, he went to Davis's grandmother's house and found some of the stolen property there.  B.B. testified that the code to unlock his iPhone was 2580.

¶19    Davis did not present any evidence.  However, in closing, trial counsel argued that someone else robbed B.B. and that Davis simply received the stolen property.

¶20    The jury found Davis guilty of one count of armed robbery, threat of force and one count of burglary, building or dwelling.  The trial court sentenced Davis to a total of fifteen years of initial confinement followed by eight years of extended supervision.

¶21    This appeal followed.

## DISCUSSION

¶22    On appeal Davis contends that the trial court denied him his right to confrontation by not allowing trial counsel to fully cross-examine D.V.

### I.    The applicable law and standards of review

*The applicable law of the right of confrontation*

¶23    Both the Sixth Amendment to the United States Constitution and article I, section 7, of the Wisconsin Constitution guarantee the right of criminal defendants to confront the witnesses against him or her.  The United States Supreme Court has repeatedly held that the "main and essential purpose of

confrontation is *to secure for the opponent the opportunity of cross-examination.*" ***Delaware v. Van Arsdall***, 475 U.S. 673, 678 (1986) (citation omitted).

¶24    In, ***Van Arsdall***, the Court went on to state:

> "[W]e have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." [***Davis v. Alaska***, 414 U.S. 308, 316-17 (1974).]  It does not follow, of course, that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness.  On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.  And as we observed earlier this Term, "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." ***Delaware v. Fensterer***, 474 U.S. 15, 20 [] (1985) (*per curiam*) (emphasis in original).

***Id.*** at 678-79.

¶25    Inquiry into a witness's bias is always material and relevant. ***State v. Williamson***, 84 Wis. 2d 370, 383, 267 N.W.2d 337 (1978) (stating bias and improper motive of a witness is never collateral), *declined to follow on other grounds*, ***Manson v. State***, 101 Wis. 2d 413, 304 N.W.2d 729 (1981).

### *Standards of review*

¶26    Generally, the decision whether to admit or exclude evidence is within the trial court's discretion. *See* ***State v. Williams***, 2002 WI 58, ¶7, 253 Wis. 2d 99, 644 N.W.2d 919.  However, in the context of a constitutional

challenge to limitations on cross-examination, "this discretion may not be exercised until the court has accommodated the defendant's right to confrontation. Whether the limitation of cross-examination violates the defendant's right of confrontation is a question of law that we review de novo." *State v. Hoover*, 2003 WI App 117, ¶7, 265 Wis. 2d 607, 666 N.W.2d 74. As explained in *Rhodes*, "a reviewing court should reverse the [trial] court if it determines that the discretionary decision to limit cross-examination did not rely on the appropriate and applicable law. The appropriate and applicable law in this context is, of course, the constitutional right accorded under the confrontation clause." *State v. Rhodes*, 2011 WI 73, ¶25, 336 Wis. 2d 64, 799 N.W.2d 850 (citations omitted).

### II. The trial court did not deny Davis his right to confrontation

¶27 Davis asserts that the trial court denied him his right to confrontation by not allowing trial counsel to fully cross-examine D.V. Davis's defense was, that although there was evidence that "put Davis in receipt of stolen property," the only evidence that Davis was directly involved with the armed robbery and burglary charges was D.V.'s testimony. Davis argues that the main focus of the defense's request for cross-examination was D.V.'s motivation to fabricate a story and that the limited questions that the trial court permitted during cross-examination were inadequate to allow the jury to evaluate D.V.'s credibility. We disagree.

¶28 Davis argues that he sought to question D.V., focusing on D.V.'s motivation for consideration "because of the significant penalties he was facing." In that vein, he sought to question D.V. about his eight prior convictions, the nature of his two pending felonies, and the severity of his possible future sentence for the pending felonies given his substantial record. Davis asserts that his theory

of defense was that someone like D.V., who was facing substantial incarceration, is more likely to fashion their testimony to please the State.

¶29 Davis further argues that he sought to question D.V. about D.V.'s statement to police regarding his wish for drug treatment and his hope that by cooperating with the State, he would get the treatment that he wanted. Davis argues that D.V.'s self-serving statement that he wanted drug treatment showed D.V.'s bias and gave him a motive to falsify information. He asserts that trial counsel should have been permitted to expose to the jury all the facts from which the jurors could draw appropriate "references"[7] relating to D.V.'s reliability as a witness.

¶30 "The fundamental inquiry in deciding whether the right of confrontation was violated is whether the defendant had the opportunity for effective cross-examination." *Hoover*, 265 Wis. 2d 607, ¶6. In his brief on appeal, Davis acknowledges that "[t]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose limits on cross-examination." We conclude that Davis's right to confrontation was not violated by the trial court's ruling. The record shows that the trial court accommodated Davis's right to confrontation.

¶31 The trial court's ruling allowed Davis to extensively cross-examine D.V. about relevant facts and in fact, Davis was able to elicit numerous admissions from D.V. Although the trial court did not allow Davis to elicit the fact that Davis's underlying two felonies were for robbery and theft, it did allow Davis the

---

[7] We assume that this was a typographical error and Davis meant inferences.

right to broadly explore D.V.'s credibility and any motives he had to falsely testify. It ruled that trial counsel could cross-examine D.V. about his agreement with the State in exchange for his testimony, that he had eight prior convictions, that he was awaiting sentencing on two felonies to which he pled guilty and was facing significant prison time, and that D.V. sought drug treatment as part of his consideration from the State for testifying.

¶32    As noted, Davis argued that he wanted to question D.V. about the details of the charges he was facing "because of the significant penalties he was facing." He asserts that what is relevant is the significant penalties that D.V. was facing. The trial court allowed trial counsel to ask, and trial counsel did in fact, specifically and repeatedly, ask D.V. if he was facing "significant prison time" for those pending felony charges.[8]

¶33    Based on the trial court's ruling, Davis was able to elicit all the information that he sought, except the specific nature of the two felony charges against D.V. The fact that D.V.'s pending charges were for robbery and theft was not relevant. Trial counsel explicitly disclaimed any argument that D.V. was the actual perpetrator and, instead simply sought to elicit that D.V. was facing a significant amount of incarceration for those charges. Thus, the nature of D.V.'s two felony charges was not relevant—his potential punishment was, and the trial court allowed trial counsel to elicit the fact that the two charges that D.V. was

---

[8] The trial court also stated that if it allowed D.V. to elicit that the underlying felonies were for robbery and theft, it would result in a trial within a trial, which would be confusing for the jury. As the State argued, because trial counsel asserted in his opening statement that the only natural suspect was a witness, inferring D.V., the jury would be confused about testimony that D.V. was convicted of a prior robbery and would conclude that he did it again in this case.

11

facing were felonies and that he was facing significant prison time at sentencing on the two felonies.

¶34    Pursuant to the trial court's order, during cross-examination of D.V., trial counsel elicited all the following admissions from D.V.:

(1)    D.V. is a drug addict.

(2)    He has been convicted of eight crimes.

(3)    He was currently facing sentencing for two felonies for which he is looking for consideration in exchange for his testimony.

(4)    He was concerned that he was facing "significant" prison time because of his prior experience.

(5)    His drug addiction causes him to commit crimes.

(6)    There have been times when he has been dishonest.

(7)    He told police he had information on Davis that he would share for a better sentence.

(8)    He wanted to give the police information because his issue was drugs, and he figured if he helped them, maybe they would help him.

(9)    He admitted again that he was not yet sentenced on the two felonies.

(10)   He was not convicted of the two felonies when he talked to police, and he was "looking for a break."

(11)   He knows he was going to prison, but he wanted treatment instead. So, he was "offering" to share his information "wherever he needed to tell it to get his break."

(12)   He was an "eight (8) time convicted criminal, drug addict" who is "trading information to help [himself]."

(13)   He was currently facing "significant prison time." He doesn't like prison, he has been there before, and he would do "[s]ome things" to avoid it.

12

(14)     He was locked up, he was facing more time in prison, and he was looking for a "life line" in the form of drug treatment.

(15)     He had a "deal" with the State that the prosecutors would tell his sentencing judge what he did for the State here.

¶35     As is evident from the above, trial counsel elicited repeated admissions from D.V. about his motivation for coming forward with information on Davis and now testifying against Davis. D.V.'s cross-examination by trial counsel spanned over nineteen pages of trial testimony and was clearly sufficient to test D.V.'s credibility. Thus, we conclude that Davis was not denied his right to confrontation.

## CONCLUSION

¶36     We conclude that the trial court accommodated Davis's right to confrontation and appropriately exercised its discretion in not allowing trial counsel to cross-examine D.V. about the specific nature of the two felonies that he was convicted of—robbery and theft, and the specific maximum penalties for each offense. Trial counsel's cross-examination was clearly more than adequate to allow the jury to evaluate D.V.'s credibility. Therefore, we affirm.

*By the Court*.—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.